THE STATE, NICHOLAS E. FEUREY, CLERK OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, PROSECUTOR, v. CHARLES J. ROE, LATE CLERK OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON.

1. The act of April 6th, 1871, directing the annual meeting of the board of chosen freeholders, &c., of the county of Hudson, must be regarded as changing the time of meeting of said board, fixed in the general act incorporating boards of chosen freeholders in the several counties of this state.
2. An organization effected by the election of a director or clerk by a sufficient number of members, duly elected, will authorize the clerk so elected to take possession of the books and seal of the corporation, and will be a good defence for him to an application for a *mandamus* to compel him to deliver them to another party claiming also to be clerk.
3. On such application, the court will not enter into the question whether the election of certain members chosen from polling districts merely, under the charter of Jersey City of March 30th, 1871, although within aldermanic districts, and not from such aldermanic districts, as provided in the act of April 6th, 1871, was void or otherwise.

On application for a *mandamus* to compel delivery of seal, papers, minutes, &c., of Hudson county, by Charles J. Roe, alleged late clerk, &c., to Nicholas E. Feurey, who claims to be the clerk of the board of freeholders.

Argued at June Term, 1871, before Justices BEDLE, WOODHULL, and SCUDDER.

For prosecutor, *S. B. Ransom.*

For defendant, *I. W. Scudder* and *W. Brinkerhoff.*

The following summary of an opinion, as prepared by BEDLE, J., includes all the facts necessary to a proper understanding of the case, so far as regards the present application.

BEDLE, J. 1. The board of chosen freeholders of the county of Hudson is a continuous corporation, under the general act incorporating chosen freeholders. *Nix. Dig.* 122.* The term board in that act, is used both in reference to the corporation and to the annual organization of the members. Such organization by that act begins and ends on the second Wednesday of May, and the terms of the members are limited thereby, (subject only to holding over for failure to elect.) 1 *Harr.* 91. *Matter of Highway.*

2. The act of April 6th, 1871, providing for a board of chosen freeholders in the county of Hudson merely, among other things, directs how the board shall be constituted in that county, and thus, in effect, changes the time of the organization of the board, and when the terms of the members shall commence and end. It also declares that all general laws relating to boards of chosen freeholders, and not inconsistent with that act, shall apply to the board in Hudson county, and repeals all acts and parts of acts inconsistent therewith. The first section provides that from and after the Tuesday next after the first Monday in May next, the board shall consist of certain members, and in the second section it is provided how they shall be chosen, and that they shall hold their office for one year and until others shall be chosen and legally qualified in their stead, and then that the term of office of the said freeholders, so chosen, shall commence on the Tuesday next after the first monday in May next, in each and every year. Those words, the term of office of the said freeholders, in looking at the scope of sections one and two, are used in their collective sense, and mean the board—the organization of the members. The term of office of each member is one year, unless he holds over, and it commences and ends with the time of the beginning and ending of the organization of the board. 1 *Harr.* 91.

Those provisions are necessarily inconsistent with an organization, under the general act, on the second Wednesday of May. All the provisions of the sixth and thirty-first sections of the general act can have effect except as to the day of the annual meeting, and by necessary implication the day

* *Rev., p.* 127.

fixed by the act of April 6th, 1871, must be considered as substituted for that.   Any other construction might make a lapse in the organization, and although it is very difficult to clearly define the meaning of the act of April 6th, the construction here given appears to be the most consistent and nearest to the intention of the legislature, so far as it can be gathered from the act.   The effect is, that the annual meeting must be regarded as fixed by the act of April 6th, and as changing the time in the general act.

3.  The 2d day of May this year (1871) was the proper day for the organization of the new board.   The old board met May 1st, 1871, and adjourned to May 2d, 1871, at 8 o'clock, at which time it again met and afterwards adjourned for the purpose of re-organization as the board of 1871-2. This organization was effected by electing O'Neill the director, also a collector and clerk, (Roe, the defendant.)   The time of this organization does not appear, but it cannot be questioned in this proceeding by Feurey, as the day on which the organization which elected him met was not the day fixed by law for the organization of the board.   There is no question that Roe was elected by a majority composed of members whose right, as being elected and entitled to their offices, is undisputed.   The O'Neill board was organized by an admitted majority of freeholders legally entitled to the office.  .Roe is in possession of the seal, minutes, books, &c., of the county, and that board has been exclusively doing the business of the county up to as late a time as the papers show the transaction of business.

In the application before us, the O'Neill board must be considered as legally organized.

4.  The organization by which Feurey was elected clerk met May 10th (the second Wednesday in May), and was composed of seventeen members, seven of whom attended the meeting of May 2d, and who, after assisting in organizing the second board, resumed their attendance with the other board the next day, May 11th.   The right of these seven men to the office of freeholder is not questioned, but the right

of the other ten is. These ten claim to have been elected from Jersey City, at a city election, April 11th, 1871. That is disputed, upon the ground that they were elected from polling precincts merely, under the charter of Jersey City, March 30th, 1871, although within aldermanic districts, and not from aldermanic districts, as provided in the act of April 6th, 1871, and that, therefore, the election was void. No opinion is intended on this question, as it cannot be determined on this application. The delivery over of the seal, minutes, &c., of the county is a mere incident to the office of clerk, and the contention between Feurey and Roe was really about the title to the office, that depended upon which of the organizations was the proper board.

That being settled in favor of the O'Neill board, the organization through which Feurey claims must, therefore, be treated as void. The question of the right of the ten claimants from Jersey City to seats in the O'Neill board will remain, and it is a matter of regret that it cannot be legally settled at this time. There are eight or nine members in that board, who are only in the situation of holding over under the act of April 6th, until others shall be elected and qualified. How far they could maintain that position as against the ten claimants in a direct proceeding, cannot now be determined. It is sufficient to say that the proper organization being ascertained, particular claimants, or contestants of seats, must seek for them in that board.

5. The application for a *mandamus* must be denied. The facts of this case having enabled the court to decide in favor of the validity of the organization of the O'Neill board, the material question of how far beyond a mere *de facto* organization the court will look, collaterally, to determine the conflicting claims to the delivery or custody of the seal and papers, is not intended to be settled.

Motion denied.

Justices WOODHULL and DEPUE concurred.